UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x

ASHLEY FRANCIS

                                        Plaintiff,

            -against-

RIDGE HILL PROPERTY OWNER LLC

                                        Defendant.
----------------------------------------------------------------x

**Docket No.: 7:22 CV 4706 (KMK)**

**AMENDED COMPLAINT**

**JURY TRIAL REQUESTED**

## AMENDED COMPLAINT

Plaintiff Ashley Francis (hereafter referred to as "Plaintiff"), by counsel, Parker Hanski LLC, as and for the Amended Complaint in this action against Defendant Ridge Hill Property Owner LLC ("Defendant"), hereby alleges as follows:

## NATURE OF THE CLAIMS

1.      This lawsuit opposes pervasive, ongoing, and inexcusable disability discrimination by the Defendant.  In this action, Plaintiff seeks declaratory, injunctive, and equitable relief, as well as monetary damages and attorney's fees, costs, and expenses to redress Defendant's unlawful disability discrimination against Plaintiff, in violation of Title III of the Americans with Disabilities Act ("ADA") 42 U.S.C. §§ 12181 *et. seq.* and its implementing regulations, the New York State Human Rights Law ("NYSHRL"), Article 15 of the New York State Executive Law ("Executive Law"'), and the New York State Civil Rights Law, § 40 *et. seq.*  As explained more fully below, Defendant owns, leases, leases to, operates, and controls a place of public accommodation that violates the above-mentioned laws.  Defendant is vicariously liable for the acts and omissions of their employees and agents for the conduct alleged herein.

2.      Defendant made a financial decision to ignore the explicit legal requirements for making their place of public accommodation accessible to persons with disabilities – all in the hopes that they would never be caught.  In so doing, Defendant made a calculated, but unlawful, decision that disabled customers are not worthy.  The day has come for Defendant to accept responsibility.  This action seeks to right that wrong via recompensing Plaintiff and making Defendant's place of public accommodation fully accessible so that Plaintiff can finally enjoy the full and equal opportunity that Defendant provides to non-disabled customers.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over this matter pursuant to 42 U.S.C. § 12188 and 28 U.S.C. §§ 1331 and 1343 as this action involves federal questions regarding the deprivation of Plaintiff's rights under the ADA.  The Court has supplemental jurisdiction over Plaintiff's related claims arising under the New York State and City laws pursuant to 28 U.S.C. § 1367(a).

4.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because Defendant's acts of discrimination alleged herein occurred in this district and Defendant's place of public accommodation that is the subject of this action is located in this district.

## PARTIES

5.      At all times relevant to this action, Plaintiff Ashley Francis has been and remains currently a resident of the State and City of New York.  More specifically, Plaintiff resides on Delancey Street in Manhattan.

6.      At all times relevant to this action, Plaintiff Ashley Francis has been and remains a wheelchair user.  Plaintiff has medical conditions that inhibit walking and restrict body motion range and movement.

7.      At all times relevant to this action, Plaintiff has driven a Dodge Grand Caravan, which is modified to allow Plaintiff to drive independently.

8.      At all times relevant to this action, Plaintiff has had a New York City Special Parking Identification Permit (a.k.a. City Disability Parking Permit), which permits Plaintiff to park in many spaces that are off-limits to other vehicles such as any "No Parking" spaces regardless of hours or street cleaning regulations.

9.      Plaintiff generally parks her vehicle near her apartment building.

10.     Plaintiff's Dodge Grand Caravan is the size of a minivan and Plaintiff exits and enters the vehicle through a door on the passenger side.

11.     Consequently, in parking facilities, Plaintiff requires a van accessible parking space with an adjacent access aisle in order for Plaintiff to safely enter and exit her vehicle.

12.     Defendant Ridge Hill Property Owner LLC owns the property located at 1 Ridge Hill Boulevard, a/k/a 73 Market Street in Westchester County, New York (hereinafter referred to as "1 Ridge Hill Boulevard, a/k/a 73 Market Street").

13.     Defendant is licensed to and does business in New York State.

14.     At all relevant times, Defendant operates, manages, controls, and leases property located at 1 Ridge Hill Boulevard, a/k/a 73 Market Street (hereinafter referred to as the "Ridge Hill Shopping Center" premises).

15.     Non-parties Nuveen Real Estate, Taconic Partners and North American

Properties created and incorporated Defendant Ridge Hill Property Owner LLC to acquire the Ridge Hill Shopping Center from nonparty Yonkers Associates, LLC.

16.    In or around April 2022, non-parties Nuveen Real Estate, Taconic Partners and North American Properties acquired the Ridge Hill Shopping Center for $220 million.

17.    Upon information and belief, Defendant Ridge Hill Property Owner LLC is a wholly owned affiliate and/or subsidiary of non-parties Nuveen Real Estate, Taconic Partners and North American Properties.

18.    Nuveen Real Estate, Taconic Partners, and North American Properties are real estate development and investment firms that manage assets and developments valued at over $150 billion dollars.

19.    Developed in 2011, the Ridge Hill Shopping Center is a 74-acre property featuring a wide variety of local and national retailers, including Apple, Banana Republic, Sephora, H&M, The Container Store, and Uniqlo. It is also home to LEGOLAND® Discovery Center; a 12-screen National Amusements Showcase Cinema de Lux; Whole Foods; LA Fitness; and several full-service restaurants including the Cheesecake Factory restaurant.

20.    The Cheesecake Factory is one of Plaintiff's favorite restaurants to go to. There are twelve restaurant locations in New York State. https://locations.thecheesecakefactory.com/ny/

21.    One of those locations is the Cheesecake Factory restaurant in the Ridge Hill Shopping Center.

22.    The Ridge Hill Shopping Center is located at: Exit 6A off the New York

State Thruway; and at the Tuckahoe Road West exit from the Sprain Brook Parkway.

23.    The Ridge Hill Shopping Center advertises itself as convenient to all residents and visitors from the New York City metropolitan area, which includes Plaintiff.

24.    Defendant's website describes the Ridge Hill Shopping Center as follows: Set atop a hill overlooking the community of Yonkers in the affluent Westchester County, Ridge Hill is a hospitality-driven destination where guests can escape and recharge. Patterned on a classic downtown and centered around a lush gathering space, this pedestrian-friendly lifestyle center is home to an eclectic mix of retail, restaurants, entertainment venues and offices. Here, shopping and dining concepts line Market Street, blending seamlessly between parkland, playgrounds and promenades. Located just 18 miles from Manhattan and easily accessible via the New York State Thruway, Ridge Hill is a welcome reprieve from the bustling city center. https://ridgehill.com/about/welcome/

25.    Plaintiff is one of the many persons who enjoys the welcome reprieve from her bustling Manhattan neighborhood when she visits the Ridge Hill Shopping Center.

26.    Plaintiff enjoys the Ridge Hill Shopping Center because it is far less crowded and hectic than shopping and dining in Manhattan.

27.    Plaintiff finds the Ridge Hill Shopping Center to be a relaxing and pleasurable experience as it is modern, clean, and safe when compared to Plaintiff's lower east side neighborhood.

28.    Plaintiff lives close to the FDR Drive, and it is uncomplicated for Plaintiff to drive from her apartment to the Ridge Hill shopping center.

29.    From the FDR drive, Plaintiff easily gets onto I-87 North and takes that to the Exit 6A entrance to the Ridge Hill Shopping Center.  The trip usually takes around 45 minutes and Plaintiff enjoys the drive to get out of the city.

30.    Before Covid-19, Plaintiff frequently visited and patronized the Ridge Hill Shopping Center.

31.    More specifically, before Covid-19, Plaintiff visited and patronized the Ridge Hill Shopping Center on least the following dates: March 12, 2019, March 31, 2019, September 16, 2019 and February 14, 2020.

32.    Shortly after Plaintiff's February 14, 2020 visit to the Ridge Hill Shopping Center, the Covid-19 pandemic began in March 2020.

33.    From March 2020 onward, Plaintiff wanted to continue visiting the Ridge Hill Shopping Center.  But, like everyone else, Plaintiff could not do so because of the Covid-19 pandemic.

34.    As the Covid-19 pandemic temporarily subsided, Plaintiff returned and patronized the Ridge Hill Shopping Center in July 2021.

35.    Unfortunately, the Covid-19 pandemic scare increased substantially in the summer of 2021 thereby making another return to the Ridge Hill Shopping Center more dangerous.

36.    In 2022, Plaintiff began to feel that it would be safe to return and did return to the Ridge Hill Shopping Center in or around June 2022.

37.    Plaintiff also has other reasons to patronize the Ridge Hill Shopping Center.

38.     Plaintiff's father lives in the Riverdale section of the Bronx and Plaintiff frequently drives to her father's residence.

39.     Plaintiff and her father both like and enjoy the Cheesecake Factory restaurant.

40.     On many occasions, Plaintiff drives with her father to eat at the Cheesecake Factory restaurant located in the Ridge Hill Shopping Center.

41.     The Cheesecake Factory restaurant at the Ridge Hill Shopping Center is the closest Cheesecake Factory restaurant to Plaintiff's father's home in Riverdale.

42.     Moreover, the Cheesecake Factory restaurant at the Ridge Hill Shopping Center is the easiest location for Plaintiff to travel to from her home.

43.     Plaintiff has also dined at the Cheesecake Factory restaurant in Elmhurst, Queens (about a 35-minute drive depending on traffic) but Plaintiff prefers to drive the extra 10 minutes to the Ridge Hill Shopping Center because it is in a more beautiful and modern location; plus, it is usually less crowded than the Elmhurst Queens location.

44.     Plaintiff has patronized most of the stores at the Ridge Hill Shopping Center.

45.     Plaintiff has patronized at least the following retail stores: the Whole Foods supermarket, the Apple Store, the AT&T store, Old Navy clothing store, H&M clothing store, Banana Republic clothing store, and Dick's Sporting Goods.  Plaintiff has also patronized the nearby Home Depot and BJ's Wholesale Club.

46.     Plaintiff has an iPhone and AT&T is Plaintiff's cell phone provider. Plaintiff has gone to the Apple Store to view iPhones and other Apple products.  And

7

Plaintiff has gone to the AT&T store concerning her cell phone service and the products available through AT&T, her cell phone provider.

47.     At the Ridge Hill Shopping Center, Plaintiff enjoys the convenience of having many of the stores she likes to patronize all in one location.

48.     Plaintiff has eaten at the following establishments: the Cheesecake Factory, Häagen-Dazs, and Yard House.  For example, Plaintiff has dined at the Cheesecake Factory restaurant on at least the following dates: March 12, 2019, March 31, 2019, September 16, 2019 and February 14, 2020.

49.     Plaintiff has traveled in her wheelchair through the sidewalks and streets in the Ridge Hill Shopping Center. During her travels, Plaintiff has encountered the architectural barriers identified herein including inaccessible walkways and paths of travel.

50.     For example, the Archer Avenue parking facility in the Ridge Hill Shopping Center is the closest parking garage to the Cheesecake Factory restaurant.  But the walkway adjacent from the Archer Avenue parking facility to the Cheesecake Factory restaurant has such a steep slope that renders it dangerous for Plaintiff, or any person in a wheelchair, to navigate.

51.     Another example is that Plaintiff has encountered and experienced the walkway on Market Street to the Whole Foods supermarket, which has an inaccessible ramped portion that is, among other things, steep and lacking handrail extensions.

52.     Adjacent to the Cheesecake Factory restaurant is a park area called Town Square, which contains tables.  None of those tables are accessible to wheelchair user. The same is true for the tables in the Fountain Plaza area in the Ridge Hill Shopping

Center.  Plaintiff has encountered these tables and cannot use them because they are not wheelchair accessible.

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

53.    Defendant is a public accommodation as it owns, leases, leases to, controls or operates a place of public accommodation, the Ridge Hill Shopping Center premises located at 1 Ridge Hill Boulevard, a/k/a 73 Market Street, within the meaning of the ADA (42 U.S.C. § 12181 and 28 C.F.R. § 36.104), and the NYSHRL (Executive Law § 292(9)).

54.    The Ridge Hill Shopping Center premises is a place of public accommodation within the meaning of the ADA (42 U.S.C. § 12181 and 28 C.F.R. § 36.104), and the NYSHRL (Executive Law § 292(9)) as it is a facility operated by a private entity and its operations affect commerce.

55.    Plaintiff has encountered the numerous architectural barriers identified herein including inaccessible parking spaces, facilities, and paths of travel.

56.     These architectural barriers have made Plaintiff's experience at the Ridge Hill Shopping Center more difficult than the experience of someone without a wheelchair accessible vehicle.

57.    Numerous architectural barriers exist at the Ridge Hill Shopping Center premises that prevent and/or restrict access to Plaintiff, a person with a disability, which include, but are not limited to, architectural barriers at the paths of travel.

58.    Upon information and belief, 1 Ridge Hill Boulevard, a/k/a 73 Market Street was designed and constructed for first possession after 2010.

59.     Upon information and belief, at some time after 2010, alterations were made to 1 Ridge Hill Boulevard, a/k/a 73 Market Street, including areas adjacent and/or attached to 1 Ridge Hill Boulevard, a/k/a 73 Market Street.

60.     Upon information and belief, at some time after January 2010, alterations were made to the Ridge Hill Shopping Center premises, and to areas of 1 Ridge Hill Boulevard, a/k/a 73 Market Street related to the Ridge Hill Shopping Center premises.

61.     The services, features, elements and spaces of the Ridge Hill Shopping Center premises are not readily accessible to, or usable by Plaintiff as required by the Americans with Disabilities Act Accessibility Guidelines, 28 C.F.R. Part 36, Appendix A, and adopted by the United States Department of Justice in 1991 as the Standards for Accessible Design ("1991 Standards") or the revised final regulations implementing Title III of the ADA adopted by the United States Department of Justice in 2010 as the 2010 Standards for Accessible Design ("2010 Standards").

62.     Because of Defendant's failure to comply with the above-mentioned laws, including but not limited to the 1991 Standards or the 2010 Standards, Plaintiff was and has been unable to enjoy safe, equal, and complete access to all of the areas of the Ridge Hill Shopping Center premises that are open and available to the public.

63.     Defendant's place of public accommodation has not been designed, constructed, or altered in compliance with the 1991 Standards and/or the 2010 Standards.

64.     Barriers to access that Plaintiff experienced, encountered and/or which deter Plaintiff from patronizing the Ridge Hill Shopping Center premises as well as architectural barriers that exist include, but are not limited to, the following:

**<u>Parking</u>**

I. Defendant fails to provide designated van accessible parking spaces that are at least 96 inches wide and have an adjacent access aisle that is at least 96 inches wide of clear unobstructed space or a 132-inch-wide parking space with an adjacent access aisle of 60 inches of clear unobstructed space. See 1991 Standards §§ 4.1.2(5)(b), 4.1.2(7)(a), 4.6.3; 2010 Standards §§ 502.2, 502.3, 502.3.1.

II. Defendant fails to provide that all the designated car accessible parking spaces are at least 96 inches wide of clear unobstructed space and have an adjacent access aisle that is at least 60 inches wide of clear unobstructed space. See 1991 Standards §§ 4.6.3, 4.6.2; and 2010 Standards §§ 502.2, 502.3, 502.3.1.

III. Defendant fails to provide that the sidewalk adjacent to designated accessible parallel parking spaces are free of signs, street furniture, and other obstructions to permit deployment of a van side-lift or ramp or the vehicle occupant to transfer to a wheelchair or scooter. See §§ R309 and R309.2 of the Public Rights-of-Way Accessibility Guidelines; and Chapter 18 of the New York State Department of Transportation Highway Design Manual.

IV. Defendant fails to provide that designated accessible parallel parking spaces located at the end of the block face are usable by vans that have rear lifts and cars that have scooter platforms. See §§ R309 and R309.2 of the Public Rights-of-Way Accessibility Guidelines; and Chapter 18 of the New York State Department of Transportation Highway Design Manual.

V. Defendant fails to provide a 5 ft wide minimum access aisle at street level for the full length of the designated accessible parking spaces that connect to a pedestrian access route and that does not encroach on the vehicular travel lane. See §§ R309 and R309.2.1 of the Public Rights-of-Way Accessibility Guidelines; and Chapter 18 of the New York State Department of Transportation Highway Design Manual.

VI. Defendant fails to provide access aisles that are marked with a sign reading "NO PARKING ANYTIME". See Building Code of New York State § 1106.5; 2010 Standards § 502.3.3.

VII. Defendant fails to provide that the surface of the designated accessible parking spaces and access aisles are stable, firm, without cracks, and slip resistant. See 1991 Standards §§ 4.5, 4.7.4; and 2010 Standards §§ 302.1, 502.4.

VIII. Defendant fails to provide that all the designated accessible parking spaces and access aisles that have slopes no greater than 2% in any direction thereby exposing Plaintiff to serious injury from rolling into vehicular traffic. See 1991 Standards § 4.6.3; and 2010 Standards §§ 502.4, 302.

11

IX.   Defendant fails to provide that the tops of the curb ramps project into a level landing of at least 36 inches in depth and equal width to the curb ramps.  See 1991 Standards § 4.7.5; and 2010 Standards § 406.4.

X.   Defendant fails to provide the minimum required number of accessible parking spaces in Surface Lot A.  See 1991 Standards §§ 4.1.2(5)(a), 4.6.1; and 2010 Standards §§ 208.1, 208.2, 502.

**<u>Inaccessible Ramps and Walkways</u>**

XI.   Defendant fails to provide that there is one accessible route connecting all the public accommodations within the site.  See 1991 Standards §§ 4.3.2, 4.1.2(2), 4.1.3(1); and 2010 Standards §§ 206.1, 206.2, 206.2.2, 206.2.4.

XII.   Defendant fails to provide that the running slope of the ramps/walkways are no greater than the maximum permissible slope.  See 1991 Standards §§ 4.1.3(1), 4.3.7, 4.8.1, 4.8.2; and 2010 Standards § 405.2.

XIII.   Defendant fails to provide that the cross slope of the ramps/walkways are no greater than the maximum permissible slope of 2%.  See 1991 Standards § 4.8.6; and 2010 Standards § 405.3.

XIV.   Defendant has not used the least steep possible slope for the ramps/walkways.  See 1991 Standards § 4.8.2; and 2010 Standards § 405.

XV.   Defendant fails to provide a level landing that is sixty inches in length and of equal width to the ramp at the top and bottom of the ramps/walkways.  See 28 C.F.R. §§ 36.302(a), 36.304(e); 1991 Standards §§ 4.1.3(1), 4.3.7, 4.3.8 and 4.8.4; and 2010 Standards § 405.7.

XVI.   Defendant fails to provide handrails on both sides of the ramps/walkways that have a running slope greater than 5% and rise more than 6 inches in height.  See 28 C.F.R. §§ 36.302(a), 36.304(e); 1991 Standards §§ 4.1.3(1) and 4.8.5; 2010 Standards §§ 403.6, 405.8, 505, 505.2.

XVII.   Defendant fails to provide handrails that are continuous from the top to the bottom of the ramps/walkways.  See 1991 Standards § 4.8.5(1); and 2010 Standards § 505.3.

XVIII.   Defendant fails to provide that the handrails extend at least 12 inches beyond the top and bottom of the ramps/walkways in a parallel and rounded return.  See 1991 Standards §§ 4.8.5(2), 4.8.5(6); and 2010 Standards § 505.10.

XIX.   Defendant fails to provide a 60-inch level landing of equal width on the ramps/walkways after each 30-inch rise in height.  See 1991 Standards §§ 4.8.2, 4.8.4; and 2010 Standards §§ 405.6, 405.7.3, 405.7.1, 405.7.2.

XX.  Defendant fails to provide a 60-inch level landing after each change in direction
for the ramps/walkways.  See 1991 Standards § 4.8.4; and 2010 Standards §
405.7.

**Inaccessible Parking Vending Machines**

XXI.  Defendant fails to provide that the reach ranges for the operable controls of the
parking vending machines are accessible.  See 1991 Standards §§ 4.2.5, 4.2.6; and
2010 Standards §§ 308, 308.2.1, 308.3.1.

XXII.  Defendant fails to provide that the parking vending machines are on an accessible
route and that the operable controls are within the accessible reach ranges.  See
1991 Standards §§ 4.2, 4.2.5, 4.2.6, and 5.8; and 2010 Standards §§ 228, 228.1,
308.2.1, 308.3.1, 309.

**Outdoor Tables and Seating**

XXIII.  Defendant fails to provide at least 5% of the outdoor work and use table surfaces
provided to patron are accessible and dispersed throughout its premises.  See 2010
Standards §§ 226.1, 226.2, 902.

XXIV.  Defendant fails to provide that at least one and not less than 5% of the outdoor
seating and standing spaces and/or dining surfaces are accessible and dispersed
throughout the facility.  See 1991 Standards §§ 4.1.3(18), 4.32, 5.1; and 2010
Standards §§ 226, 226.1, 226.2, 902.1.

XXV.  Defendant fails to provide the minimum required maneuvering clearances of level
and clear space in front of the outdoor seating.  See 1991 Standards §§ 4.32.2, 5.3;
and 2010 Standards §§ 305.3, 802.1.2, 802.1.3, 902.2, 903.1, 903.2, 902.4.1.

XXVI.  Defendant fails to provide outdoor tables and surfaces that are at an accessible
height.  See 1991 Standards §§ 4.32.4, 5.1; and 2010 Standards § 902.3.

XXVII.  Defendant fails to provide outdoor tables and/ surfaces that have the minimum
required knee clearances.  See 1991 Standards §§ 4.32.3, 5.1; and 2010 Standards
§§ 305.4, 306.

XXVIII.  Defendant fails to provide outdoor tables and/or surfaces that have the minimum
required toe clearances.  See 1991 Standards §§ 4.32.3, 5.1; and 2010 Standards
§§ 305.4, 306.

65.    Upon information and belief, a full inspection of the Ridge Hill Shopping

Center premises will reveal the existence of other barriers to access.

66.     As required by the ADA (remedial civil rights legislation) to properly remedy Defendant's discriminatory violations and avoid piecemeal litigation, Plaintiff requires a full inspection of the Ridge Hill Shopping Center premises in order to catalogue and cure all of the areas of non-compliance with the ADA.  Notice is therefore given that Plaintiff intends on amending the Amended Complaint to include any violations discovered during an inspection that are not contained in this Amended Complaint.

67.     Defendant has denied Plaintiff the opportunity to participate in or benefit from services or accommodations because of disability.

68.     Defendant has not satisfied their statutory obligation to ensure that their policies, practices, procedures for persons with disabilities are compliant with the laws. Nor has Defendant made or provided accommodations or modifications to persons with disabilities.

69.     Plaintiff has a realistic, credible, and continuing threat of discrimination from the Defendant's non-compliance with the laws prohibiting disability discrimination. The barriers to access within the Ridge Hill Shopping Center premises continue to exist and deter Plaintiff.  The barriers to access within the Ridge Hill Shopping Center premises continue to make Plaintiff's visits more difficult than what is experienced by able-bodied persons.

70.     Plaintiff intends to patronize the Ridge Hill Shopping Center in December 2022 to do Christmas shopping at the stores therein.

71.     Plaintiff intends to visit her father during the upcoming holidays (December and/or January 2023).  During those visit(s) to her father, Plaintiff plans on

going out to eat with her father at the Cheesecake Factory restaurant in the Ridge Hill Shopping Center.

72.    Plaintiff also intends to dine at the Cheesecake Factory restaurant in the Ridge Hill Shopping Center without her father within the next few months as well (sometime between December 2022 and March 2023) based on when it is convenient for Plaintiff and her friend(s) to travel to the Ridge Hill Shopping Center.

73.    Thereafter, Plaintiff intends to continue to patronize the Ridge Hill Shopping Center premises several times a year as she is done in the past.

74.    Plaintiff is also a "tester" for the purposes of asserting basic civil rights and monitoring, ensuring, and determining whether the Ridge Hill Shopping Center premises is fully accessible and compliant with the 1991 Standards and/or the 2010 Standards.

75.    Plaintiff intends to patronize the Ridge Hill Shopping Center premises several times a year as "tester" to monitor, ensure, and determine whether the Ridge Hill Shopping Center premises is fully accessible and compliant with the 1991 Standards and/or the 2010 Standards.

**FIRST CAUSE OF ACTION**
**(VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT)**

76.    Plaintiff realleges and incorporates by reference all allegations set forth in this Amended Complaint as if fully set forth herein.

77.    Plaintiff is substantially limited in the life activity of both walking and body motion range and thus has a disability within the meaning of the ADA.  As a direct and proximate result of Plaintiff's disability, Plaintiff uses a wheelchair for mobility, and also has restricted use of arms and hands.

78.     The ADA imposes joint and several liability on both the property owner and lessee of a public accommodation.  28 C.F.R. 36.201(b).

79.     Under the ADA, both the property owner and lessee are liable to the Plaintiff, and neither can escape liability by transferring their obligations to the other by contract (i.e., lease agreement).  28 C.F.R. 36.201(b).

80.     Defendant has and continue to subject Plaintiff to disparate treatment by denying Plaintiff full and equal opportunity to use their place of public accommodation all because Plaintiff is disabled.  Defendant's policies and practices have and continue to subject Plaintiff to disparate treatment and disparate impact.

81.     By failing to comply with the law in effect for decades, Defendant has articulated to disabled persons such as the Plaintiff that they are not welcome, objectionable, and not desired as patrons of their public accommodation.

82.     Defendant has discriminated against the Plaintiff by designing and/or constructing a building, facility and place of public accommodation that is not readily accessible to and usable by the disabled Plaintiff and not fully compliant with the 1991 Standards or the 2010 Standards.  See 28 C.F.R. § 36.401(A)(1) and 42 U.S.C. §12183(a)(1).

83.     The Ridge Hill Shopping Center premises are not fully accessible and fail to provide an integrated and equal setting for the disabled, all in violation of 42 U.S.C. §12182(b)(1)(A) and 28 C.F.R. § 36.203.

84.     Defendant failed to make alteration accessible to the maximum extent feasible in violation of 28 C.F.R. §§ 36.402 and 36.406 and 42 U.S.C. §12183(a)(2).

85.     The paths of travel to the altered primary function areas accessible were not made accessible in violation of 28 C.F.R. § 36.403.

86.     Defendant failed to make all readily achievable accommodations and modifications to remove barriers to access in violation of 28 C.F.R. § 36.304.  It would be readily achievable to make Defendant's place of public accommodation fully accessible.

87.     By failing to remove the barriers to access where it is readily achievable to do so, Defendant has discriminated against Plaintiff on the basis of disability in violation of § 302(a) and 302(b)(2)(A)(iv) of the ADA, 42 U.S.C. § 12182(a), (b)(2)(A)(iv), and 28 C.F.R. § 36.304.

88.     In the alternative, Defendant has violated the ADA by failing to provide Plaintiff with reasonable alternatives to barrier removal as required by 28 C.F.R. § 36.305.

89.     Defendant's failure to remove the barriers to access constitutes a pattern and practice of disability discrimination in violation of 42 U.S.C. § 12181 *et. seq.*, and 28 C.F.R § 36.101 *et. seq.*

90.     Defendant has and continue to discriminate against Plaintiff in violation of the ADA by maintaining and/or creating an inaccessible public accommodation.

## SECOND CAUSE OF ACTION
### (VIOLATIONS OF THE NEW YORK STATE HUMAN RIGHTS LAW)

91.     Plaintiff realleges and incorporates by reference all allegations set forth in this Amended Complaint as if fully set forth herein.

92.     Plaintiff suffers from various medical conditions that separately and together prevent the exercise of normal bodily functions in Plaintiff; in particular, the life

activities of both walking and body motion range.  Plaintiff therefore suffers from a disability within the meaning of the Executive Law § 296(21).

93.     In 2019, the New York State legislature enacted legislation that provides effective immediately that the New York State Human Rights Law shall be "construed liberally for the accomplishment of the remedial purposes thereof, regardless of whether federal civil rights laws, including those laws with provisions worded comparably to the provisions of this article, have been so construed". See Executive Law § 300 [effective date: August 12, 2019].

94.     By amending the Executive Law § 300 to mirror the text of the New York City Local Civil Rights Restoration Act of 2005 (Local Law 85 of 2005), the New York State legislature confirmed the legislative intent to abolish parallel construction between the New York State Human Rights Law and related Federal anti-discrimination laws.

95.     Defendant has and continue to subject Plaintiff to disparate treatment by denying Plaintiff equal opportunity to use their place of public accommodation all because Plaintiff is disabled.

96.     Defendant discriminated against Plaintiff in violation of NYSHRL (Executive Law § 296(2)), by maintaining and/or creating an inaccessible place of public accommodation.  Defendant has aided and abetted others in committing disability discrimination.

97.     Defendant has failed to make all readily achievable accommodations and modifications to remove barriers to access in violation of NYSHRL (Executive Law § 296(2)(c)(iii)).

98.     In the alternative, Defendant has failed to provide Plaintiff with reasonable alternatives to barrier removal as required in violation of NYSHRL (Executive Law § 296(2)(c)(iv)).

99.     It would be readily achievable to make Defendant's place of public accommodation fully accessible.

100.    It would not impose an undue hardship or undue burden on Defendant to make their place of public accommodation fully accessible.

101.    As a direct and proximate result of Defendant's unlawful discrimination in violation of NYSHRL, Plaintiff has suffered, and continues to suffer emotional distress, including but not limited to humiliation, embarrassment, stress, and anxiety.

102.    Plaintiff has suffered and will continue to suffer damages in an amount to be determined at trial.

## THIRD CAUSE OF ACTION
### (VIOLATIONS OF THE NEW YORK STATE CIVIL RIGHTS LAW)

103.    Plaintiff realleges and incorporates by reference all allegations set in this Amended Complaint as if fully set forth herein.

104.    Defendant discriminated against Plaintiff pursuant to New York State Executive Law.

105.    Consequently, Plaintiff is entitled to recover the monetary penalty prescribed by Civil Rights Law §§ 40-c and 40-d for each and every violation.

106.    Notice of this action has been served upon the Attorney General as required by Civil Rights Law § 40-d.

**INJUNCTIVE RELIEF**

107.    Plaintiff will continue to experience unlawful discrimination as a result of Defendant's failure to comply with the above-mentioned laws.  Therefore, injunctive relief is necessary to order Defendant to alter and modify their place of public accommodation and their operations, policies, practices, and procedures.

108.    Injunctive relief is also necessary to make Defendant's facilities readily accessible to and usable by Plaintiff in accordance with the above-mentioned laws.

109.    Injunctive relief is further necessary to order Defendant to provide auxiliary aids or services, modification of their policies, and/or provision of alternative methods, in accordance with the ADA and NYSHRL.

**JURY DEMAND**

Plaintiff demands a trial by jury on all claims so triable.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court enter a judgment against the Defendant in favor of Plaintiff that contains the following relief:

A.  Enter declaratory judgment declaring that Defendant has violated the ADA and its implementing regulations, and the NYSHRL and declaring the rights of Plaintiff as to Defendant's place of public accommodation, and Defendant's policies, practices, and procedures;

B.  Issue a permanent injunction ordering **Defendant to close and cease all business** until Defendant remove all violations of the ADA, the 1991 Standards or the 2010 Standards, and NYSHRL, including but not limited to the violations set forth above;

     C.  Retain jurisdiction over the Defendant until the Court is satisfied that the Defendant's unlawful practices, acts and omissions no longer exist and will not reoccur;

     D.  Award Plaintiff compensatory damages and nominal damages as a result of Defendant's violations of NYSHRL;

     E.  Award Plaintiff the monetary penalties for each and every violation of the law, per defendant, pursuant to New York State Civil Rights Law §§ 40-c and 40-d;

     F.  Find that Plaintiff is a prevailing party and award reasonable attorney's fees, costs, and expenses pursuant to the ADA; and

     G.  For such other and further relief, at law or in equity, to which Plaintiff may be justly entitled.

Dated: November 18, 2022
     New York, New York

                    Respectfully submitted,

                    **PARKER HANSKI LLC**

                    By:____/s_____
                        Glen H. Parker, Esq.
                        Attorneys for Plaintiff
                        40 Worth Street, Suite 602
                        New York, New York 10013
                        Telephone: (212) 248-7400 ext. 15
                        Facsimile: (212) 248-5600
                        Email: ghp@parkerhanski.com